IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BRIAN TRACEY HILL,

    Plaintiff,                               CV F 04 5838 OWW WMW   P

  vs.                                     FINDINGS AND RECOMMENDATION

CALIF. DEPT. OF CORRECTIONS, et al.,

    Defendants.

     Plaintiff is a state prisoner proceeding pro se in a civil rights action. Pending before the court is defendants's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed the motion.

     This action proceeds on the complaint filed on May 24, 2004. Plaintiff, an inmate in the custody of the California Department of Corrections at Folsom State Prison, brings this civil rights action, claiming that defendants violated his First Amendment rights because prison officials used documents found in his cell to validate him as a gang member. Plaintiff also claims that defendants violated his Fourteenth Amendment rights because they denied him procedural due process through the gang validation process and initial placement in the Security Housing Unit (SHU) while determining gang association.

     Plaintiff's specific factual allegations follow.[1] Plaintiff alleges that at all times

---

[1] Plaintiff does not dispute defendants' characterization of his allegations.

1

mentioned in the complaint he was an inmate at California State Prison, San Quentin (CSP - San Quentin) and California State Prison, Corcoran (CSP -Corcoran). On January 15, 1999, while at CSP - San Quentin, Plaintiff was confronted by several Institutional Gang Investigators (ISI) about his association and affiliation with the Black Guerilla Family (BGF) prison gang. (Compl. p. 9)   On February 9, 1999, Plaintiff was taken from his cell by IGI personnel and questioned further about his association with the BGF.(Compl. p. 9)   Plaintiff claims that officers tried to coerce him into becoming a gang informant, which he refused. (Compl. p. 9) He was subsequently placed in the SHU while prison officials validated him as a gang member. (Compl. p. 9)

On February 10, 1999, Plaintiff was validated as a prison gang member by prison officials and placed in the SHU for an indefinite period of time. (Compl. p. 10) Plaintiff claims that prison officials failed to interview him in the validation process, instead, relying on confidential information and documents found in his cell. (Compl. pp. 9-18) .

On February 17, 1999 and March 17, 1999, hearings were conducted to determine if Plaintiff should remain in the SHU. (Compl. p. 9) Plaintiff claims that he was not given access to (1) a staff assistant; (2) the opportunity to screen or call prospective witnesses; and (3) access to his own central file. (Compl. pp. 17-18)

According to Plaintiff's complaint, he is currently housed in the SHU. (Compl. p. 18) Plaintiff claims that the conditions of confinement in the SHU are a significant hardship. (Compl. p. 6) Plaintiff's complaint is vague as to which prison he is describing, however, Plaintiff alleges that privilege restrictions in the SHU include (1) no contact visitation; (2) canteen purchases limited to $45 per month; (3) receipt of one package a year; and (4) minimum of 10 hours per week out of cell exercise. (Compl. p. 7)

Plaintiff names Defendant Scribner as a responsible party for all causes of action due to

his position as warden of the prison. (Compl. p. 1A) Plaintiff notes that Defendant Scribner is, "responsible for the overall supervision, control, and operations of (CSP-Cor) and is responsible for the overall charge and care of inmates confined at the institution." (Compl. p. 1B) Plaintiff also names Defendant Woodford as a responsible party due to her former position as warden of CSP - San Quentin. (Compl. p. 1B) Similar to Defendant Scribner, Plaintiff notes that Defendant Woodford is, "responsible for the overall supervision, control, and operations of (CSP-SQ) and is responsible for the overall charge and care of inmates confined at the institution." Other than the description of their duties as Warden on pages 1A and 1B, Plaintiff's complaint is devoid of any alleged conduct by either Defendant Scribner or Woodford. (Compl. pp. 1-21)

## MOTION TO DISMISS STANDARDS

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). Under the basic rule, a motion to dismiss for failure to state a claim should not be granted unless "it appears beyond doubt that plaintiff can prove no set of facts in support of the claim that would entitle him to relief." See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v. Roosevelt Lake Log Owners Ass'n., 651 F.2d 1289, 1294 (9th Cir. 1981).

In a case where the plaintiff is pro se, the court has an obligation to construe the pleadings liberally. Bretz v. Kelman, 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc). This rule applies with particular force to civil rights cases. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

Defendants argue that plaintiff's claims are untimely and must be dismissed. Specifically, defendants argue that plaintiff's First and Fourteenth Amendment claims must be

dismissed because they are time-barred.

The statute of limitations for claims brought under 42 U.S.C. § 1983 is governed by the forum state's statute of limitations for personal injury actions. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985); Van Strum v. Lawn, 940 F.2d 406, 408 (9th Cir. 1991). In post Wilson California, that period is one year. Azul-Pacifico, Inc. v. City of Los Angeles, 973 F.2d 704 (9th Cir. 1992). Also, while federal law determines when a cause of action accrues (see Elliott v. Union City, 25 F.3d 800, 801-02 (9th Cir. 1994)), state law determines the applicable tolling doctrines. Id. at 802; see also Hardin v. Straub, 490 U.S. 536, 543-44 (1989).

On January 1, 2003, California Code of Civil Procedure § 335.1 became law. The new section extends the prior limitations period applicable to personal injury actions (and correspondingly to federal civil rights claims, *see* Wilson v. Garcia, 471 U.S. 261, 271-72, 276, (1985)) from one year under § 340(3) to two years. See Cal.Civ.Proc.Code § 335.1. Plaintiff does not benefit from this new two-year statute of limitations; since his claims herein accrued before January 1, 2003, the one-year statute governs. *See* Krusesky v. Baugh, 138 Cal.App.3d 562, (1982) ("[S]tatute[s][are] presumed to be prospective only and will not be applied retroactively unless such intention clearly applies in the language of the statute itself."); *see also* Landgraf v. USI Film Products, 511 U.S. 244, 265-66 (1994) ("[T]he 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.' ). Nothing in the legislation extending California's personal-injury limitations period suggests that the California Legislature intended § 335.1 to apply retroactively, except to claims made by victims of terrorist actions on September 11, 2001. *See* Cal. Senate Bill 688, sections © & (d). Abrieu v. Ramirez, 284 F.Supp.2d 1250, 1255 (C.D. Cal. 2003). Plaintiff does not fall within this narrow exception.

Under federal law, the limitation period begins to run when the plaintiff knows of or has reason to know of the injury that is the basis for the action. Trotter v. International

Longshoreman's and Warehouseman's Union, Local 13, 704 F.2d 1141, 1143 (9th Cir. 1983). California Code of Civil Procedure § 352.1(a) provides two years of tolling if the person is imprisoned on a criminal charge for a term less than life.  In his opposition, plaintiff indicates that he was imprisoned on a life term, and that sentence was vacated to a lesser term.   For purposes of this motion, the court will apply the two year tolling provision.

Defendants argue that plaintiff clearly knew or had reason to know of any alleged violation of his First and Fourteenth Amendment rights no later than March 17, 1999, when it was determined that he should remain in the SHU for an indefinite period of time due to his gang validation.  The basis of Plaintiff's due process claim is his gang validation.   Plaintiff had three years, or until March 17, 2002, in which to file his lawsuit.  This action was not filed until May 24, 2004, more than two years after the limitations period expired.

In his opposition, Plaintiff does not dispute that his claim accrued in March of 1999. Plaintiff argues that he was serving a life sentence until March of 2003, at which time his sentence was reversed on appeal and he was sentenced to a lesser term.  Plaintiff argues that he had two years from the date, or March of 2005, in which to file his claim.  Plaintiff cites Hardin v. Straub, 471 U.S. 261 (1985) in support of his proposition.  Hardin reaffirmed the U.S. Supreme Court's view that the tolling provisions of state law apply.  In that case, Michigan law provided that a civil rights claim tolled the entire time a plaintiff was under the disability of imprisonment.  As noted above, California law is clear.  At the time the claim accrued, Plaintiff was serving a life sentence. Pursuant to California law, he had one year to file his claim.  As noted, however, this court will apply the two year provision.  There is no legal authority for the proposition that a claim is tolled for a period of time beginning when a life sentence is overturned.  Any claim relating to Plaintiff's validation as a gang member is therefore time barred.

Accordingly, IT IS HEREBY RECOMMENDED that Defendants' motion to

1  dismiss be granted, and this action be dismissed as time barred.

2  These findings and recommendations are submitted to the United States District
3  Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B).  Within
4  thirty days after being served with these findings and recommendations, any party may file
5  written objections with the court and serve a copy on all parties.  Such a document should be
6  captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the
7  objections shall be served and filed within ten days after service of the objections.  The parties
8  are advised that failure to file objections within the specified time waives all objections to the
9  judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).  Failure to file
10 objections within the specified time may waive the right to appeal the District Court's order.
11 Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

16      IT IS SO ORDERED.

17 **Dated:    January 19, 2007**                           **/s/  William M. Wunderlich**
    mmkd34                                          UNITED STATES MAGISTRATE JUDGE